# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1766 | **DATE** | 11/9/2004 |
| **CASE TITLE** | | Gentle vs. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons stated in the attached Memorandum Opinion and Order, Ms. Gentle's summary judgment motion (doc. # 18) is denied and the Commissioner's motion for summary judgment (doc. # 19) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | NOV 15 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |

| mm | courtroom deputy's initials | U.S. DISTRICT COURT  2004 NOV 12 AM 8:29 | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials |
|---|---|---|---|---|

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE GENTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 1766 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| JO ANNE BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

NOV 1 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nicole Gentle, seeks judicial review of a final decision denying her application for disability insurance benefits, under Sections 405(g) and 416(i) of the Social Security Act. 42 U.S.C. §§ 405(g), 416(i) (2004). Ms. Gentle filed an application for Disability Insurance Benefits and Supplemental Security Income payments on September 18, 2001, alleging she became disabled on September 4, 2001 due to asthma, back pain and leg pain (R. 96-98). Ms. Gentle's application was denied and, on February 19, 2003, an administrative hearing was held before the Administrative Law Judge (the "ALJ"). During the hearing, Ms. Gentle, who was represented by counsel, testified to suffering from depression in addition to the above-listed conditions, and further claimed that her conditions are exacerbated by her obesity (R. 26-51). Linda Gels, a vocational expert, also testified at the hearing (R. 51-58).

Ms. Gentle's benefits claim was denied by the ALJ in a written decision dated October 31, 2003 (R. 16-21). The ALJ determined that Ms. Gentle was not disabled because she retained the ability to perform her past work as either a lunchroom attendant or deli worker. Ms. Gentle, through her attorney, sought review of the ALJ's decision on December 5, 2003 (R. 269-274). The Appeals



Council denied Ms. Gentle's request for review on February 3, 2004 (R. 9-11), making the ALJ's decision the final decision of the Commissioner. This lawsuit followed.

Ms. Gentle now seeks summary judgment reversing the Commissioner's decision or, in the alternative, remanding the case for further proceedings (doc. # 18). The Commissioner has filed a cross-motion for summary judgment to affirm the decision below (doc. # 19). For the reasons stated below, the Court grants the Commissioner's motion for summary judgment and denies Ms. Gentle's motion for summary judgment.

## I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision. The Court will discuss Ms. Gentle's personal and medical history, followed by a summary of the hearing testimony and the ALJ's written decision.

## A.

Ms. Gentle was born on October 1, 1976, making her 26 years old at the time of the hearing (R. 28). Ms. Gentle is single and lives with her two children (R. 28). She is 5'11" tall and weighs approximately 275 pounds (R. 39). Ms. Gentle graduated from high school, during which time she was enrolled in special education classes (R. 32-33). Her previous work experience includes positions held as a deli worker, childcare worker, and school lunchroom attendant (R. 28-30, 102). Ms. Gentle has not been employed since she left her job as a lunchroom attendant on September 4, 2001, but continues to care for her children and perform general housekeeping duties such as cooking, cleaning, and grocery shopping (R. 31-32).

The medical records relevant to Ms. Gentle's back and leg pain date from July 31, 2001, when she complained to her obstetrician, Dr. Collingham, about shooting pains in her right leg that had been getting worse over the previous three weeks (R. 180). At the time, Ms. Gentle was

pregnant with her second child. Dr. Collingham referred Ms. Gentle to a physical therapist and to a neurologist, noting that she may have either a compressed nerve or lumbar disk syndrome (R. 180). On September 6, 2001, Ms. Gentle saw Dr. Lee Ann Myers, a neurologist at Evanston Hospital (R. 170-71). Dr. Myers' treatment notes indicate that Ms. Gentle reported feeling shooting pain in her right hip and leg, which she had been experiencing off and on since November 1998, when she delivered her first child (R. 170). Ms. Gentle had previously taken Celebrex for the pain, but it was not effective (R. 170). Dr. Myers recommended Ms. Gentle find a different job for the duration of her pregnancy that did not involve standing (R. 169). Ms. Gentle was working as a lunchroom attendant at the time (R. 28-29).

On September 24, 2001, Ms. Gentle saw a physician at Evanston Northwestern Hospital who noted that Ms. Gentle may have multiple slipped discs, but concluded that nothing could be done about her condition until after her pregnancy (R. 179). Ms. Gentle was scheduled for physical therapy three times in November and December 2001 (R. 182). Ms. Gentle gave birth to her second child on February 28, 2002 (R. 29). In April 2002, Ms. Gentle had an MRI of her lumbar spine, revealing a small disc protrusion at the L5-S1 level (R. 246, 252). A letter from Dr. Pamela McShane, dated April 11, 2002 states that this condition prevents Ms. Gentle from lifting heavy objects (R. 246). Ms. Gentle's outpatient psychiatric notes from May 2002 indicate that Dr. McShane stated that Ms. Gentle's MRI showed "no significant physical abnormality requiring additional treatment or disability" (R. 241). The outpatient psychiatric notes also state that Ms. Gentle's pain symptoms may be related to stress (R. 241).

Ms. Gentle's problems with depression and anxiety were first documented at age six, when a teacher requested that she be evaluated by a psychiatrist due to behavioral concerns (R. 163). Ms. Gentle continued to have emotional problems and received periodic mental health evaluations while

3

in school (R. 163-164). After graduating from high school, Ms. Gentle does not appear to have sought treatment for depression until May 2002, when she was diagnosed with major depression and received a prescription for Celexa (R. 227). At that time, Ms. Gentle reported to her doctors that she had been sexually abused by her mother's boyfriends from ages five through fourteen (R. 227-229). She also reported feeling overwhelmed by the task of caring for her children and that she experienced episodes of anxiety or panic (R. 227-229). The treatment notes indicate that Ms. Gentle's obesity is a factor related to her depression (R. 227-229).

From May 2002 through January 2003, Ms. Gentle continued to seek regular psychiatric treatment and her doctors made some adjustments to her medication prescriptions (R. 227-240). As of January 2003, Ms. Gentle's treatment notes indicate that her symptoms had improved, although she was still experiencing some depression, feelings of being overwhelmed, and reluctance to leave her house (R. 240). Her attending psychiatrist noted that Ms. Gentle experienced mild constipation and a decreased ability to concentrate as side-effects of taking Prozac (R. 240, 245). On April 8, 2003, Dr. Robert Burton wrote a letter stating that Ms. Gentle had been diagnosed with recurrent major depression, that her symptoms (decreased energy, depressed mood, panic/anxiety, and feeling easily overwhelmed) were disabling, and prevented her from caring full-time for her children, and that Ms. Gentle should be permitted to have childcare assistance (R. 254).

## B.

At the administrative hearing, Ms. Gentle testified that she has not performed any paid work since she left her position as a school lunchroom attendant on September 4, 2001, the alleged onset date of her disabilities (R. 28). The ALJ asked Ms. Gentle several questions about her employment history. Ms. Gentle stated that she left her job as a school lunchroom attendant – which was during her second pregnancy – because the position required too much standing, moving around, and

4

lifting, which caused her to experience pain in her back (R. 28-29). She also testified to having experienced difficulty filling out all the paperwork for the lunchroom attendant position, which she attributed to her difficulty reading and writing and maintaining the requisite level of attention (R. 35). However, there was no evidence that these difficulties rendered Ms. Gentle's job performance unacceptable to her employer.

At the hearing, Ms. Gentle's attorney claimed that Ms. Gentle is disabled and that, due to a combination of her impairments, she is unable to sustain substantial gainful activity (R. 26, 27). Her attorney stated that Ms. Gentle's has low back syndrome, as indicated by obstetrician's notes (R. 26, 179-181); that she experiences shooting pain in her right leg, especially when standing or walking for prolonged periods (R. 26); that she experiences pain in her back and stiffness in her right leg when sitting for extended periods of time (R. 26); that she suffers from asthma, which is triggered by dust, smoke, mold, and hot weather (R. 26); that she would probably be considered obese, which exacerbates her pain symptoms (R. 27); that she takes Prozac for depression, experiences crying spells and is reluctant to leave her home (R. 27); that she has difficulty keeping up with her children and household cleaning (R. 27); that, as a result of taking Prozac and Benadryl, she feels drowsy and must lie down during the day and also has problems with mental focus and functioning (R. 27).

Ms. Gentle brought a brace with her to the hearing that she received from her physical therapist (R. 39). Her physical therapist instructed Ms. Gentle to wear the brace at all times, but since Ms. Gentle finds the brace uncomfortable, she only wears it when she is bending over frequently or when she needs to lift something (R. 39). She finds it difficult to lift her daughter, who weighed 25 pounds at the time of the hearing (R. 47). Ms. Gentle stated that she experiences shooting pains on a daily basis, starting in her lower back, going through both hips, and down the

back of her right leg to her knee (R. 40). Ms. Gentle stated that she started experiencing this pain several years prior to the hearing, when she was working at the grocery store (R. 36). She testified to experiencing this pain when she walks and that the pain lasts for hours (R. 40-42). Ms. Gentle stated that if she sits to rest, her leg stiffens, making the pain worse (R. 41). She takes Vicodin or Extra Strength Tylenol about three times a week for that pain, but tries to avoid taking Vicodin more often than three times per week due to the fact that she is nursing her daughter and also because it causes blurry vision and drowsiness (R. 41). Ms. Gentle can stand in one place approximately ten or fifteen minutes before she starts to experience leg or back pain, after which time she usually lays down (R. 42). She can usually sit about twenty minutes before she starts to experience pain or discomfort in her back, at which point she usually stands up (R. 43).

Ms. Gentle testified that she was not certain when she started seeing a psychiatrist for her depression (R. 34). Although she was taking Prozac as of the date of the hearing, she was still experiencing some symptoms of depression (R. 43). She stated that she regularly experiences crying spells (R. 44) and has difficulty focusing and keeping appointments (R. 45). Ms. Gentle testified that she has anxiety attacks about twice a week, during which her stomach twists, her chest tightens, her head spins, and she has difficulty breathing (R. 46). When she takes Prozac, Ms. Gentle experiences dry mouth, upset stomach, and sleepiness (R. 48). She feels especially sleepy when she takes other medication along with Prozac, such as allergy and sinus medications (R. 48). She usually takes her medication at 9:00 a.m., and needs to sleep every day around 11:00 a.m. for three or four hours (R. 49-50). She experiences difficulty sleeping at night, with which the Prozac is somewhat helpful (R. 49).

Ms. Gentle takes care of her infant daughter during the day, although she is sometimes assisted by an elderly female acquaintance (R. 30). Her son, who was four at the time of the

6

hearing, goes to day care (R. 30). In addition to caring for her children, Ms. Gentle also tries to clean her house (R. 31-32). She mostly prepares microwaveable meals for herself and her children (R. 32). Ms. Gentle says that she does not leave the house except to go to the public assistance office, to see her psychiatrist, or to go to the grocery store (R. 31-32). She rests intermittently throughout the day (R. 36). She also testified to having difficulty keeping up with her day-to-day activities (R. 31-32).

Ms. Gentle testified that she can barely read (R. 32), and that she has difficulty reading children's books to her children (R. 33). Ms. Gentle did graduate from Evanston Township High School, during which time she was enrolled in special education courses (R. 32-33). At the hearing, Ms. Gentle testified that her learning problems are the biggest hindrance to her engaging in sustained gainful activity (R. 34-35) – a problem she did not identify in her original application for benefits – and that her next most significant problem is her back condition (R. 35-36).

Ms. Gentle stated that she takes steroids and uses an inhaler for her asthma condition, which she has had since birth (R. 37). She stated that her asthma symptoms are triggered by smoke, dust, extreme temperatures, her allergies (to animal hair, dust, and mold), and when she has a cold (R. 37). She testified that she went to the hospital several times for her asthma symptoms during the year she was pregnant (R. 38). Ms. Gentle stated that when she went to the hospital on those occasions, the staff put her on an IV with steroids, but did not recall whether she received any injections (R. 38). Ms. Gentle also went to the emergency room when her carbon monoxide detector went off, but that visit was not asthma-related (R. 38).

The ALJ also received testimony from Linda Gels, a vocational expert ("VE"), who heard Ms. Gentle's testimony and reviewed her file (R. 50). The VE testified that, based on the definitions in the Dictionary of Occupational Titles, Ms. Gentle's previous positions as a lunchroom attendant

7

and as a deli worker are considered to be both "light and unskilled" (R. 51, 52). The ALJ asked the VE, hypothetically, whether those jobs could be performed by a 26-year-old claimant, with past relevant work experience and education equivalent to Ms. Gentle's, who is (a) unable to lift, carry, push, or pull more than ten pounds frequently and twenty pounds occasionally, (b) unable to perform certain postural movements (*e.g.*, bending, twisting, crouching, crawling, turning) more than occasionally, and (c) unable to maintain the attention and concentration necessary for detailed or complex tasks (R. 52). The VE testified that someone with the limitations listed by the ALJ could perform "light and unskilled" work, which would include work as a lunchroom attendant or deli worker (R. 52). The VE said that such work could be performed by an individual who could not perform detailed tasks (R. 54).

The VE further testified that her opinion would not change if the hypothetical were modified to include a need to avoid temperature and humidity extremes and areas with moderate amounts of pulmonary irritants (R. 53). The VE stated that such an individual could perform light and unskilled work, and would not be precluded from that kind of employment if that person needed to miss work due to illness one day per month; however, the VE said a person likely could not perform such work if that person needed to miss two or more days each month due to illness (R. 53-54, 56).

The VE testified that if a hypothetical individual with the limitations listed by the ALJ also was limited to sedentary work, that person could do "bench work" (*e.g.*, work as a hand packer or assembly line worker), and that approximately 3,000 such jobs exist in the Chicago market (R. 57). If a hypothetical individual needed to alternate his or her position between sitting and standing every 30 minutes, the vocational expert said that such an individual could not sustain any gainful activity, even sedentary work, as it is necessary for an individual to maintain one position for 45 minutes to an hour to maintain a productive work pace (R. 58). If an individual needed to sleep one or two

8

hours during the workday, the vocational expert thought that such a person would not be able to sustain any gainful activity, even sedentary work (R. 56).

## C.

The ALJ issued his decision on October 31, 2003, which applied the standard five-step sequential evaluation pursuant to 20 C.F.R. §§ 404.1520 and 416.920 (2004). At Step 1, the ALJ found that Ms. Gentle had not engaged in substantial gainful activity since the alleged onset date of her disability (R. 20). At Step 2, the ALJ found that Ms. Gentle suffers from asthma, low back pain syndrome, hypertension and depression, which are "severe" impairments within the meaning of the Regulations (R. 17, 20). At Step 3, the ALJ found that Ms. Gentle's impairments do not meet or medically equal any of the impairments listed in the regulations as so severe as to preclude substantial gainful activity (R. 17, 20).

At Step 4, the ALJ determined that Ms. Gentle's residual functional capacity ("RFC") did not preclude her from performing her past relevant work as a lunchroom attendant or as a deli worker and that she was, therefore, not entitled to Disability Insurance Benefits or Supplemental Security Insurance Benefits (R. 21). Specifically, the ALJ found that Ms. Gentle retained the RFC "to lift, carry, push and pull ten pounds frequently and twenty pounds occasionally; to crouch, bend, twist, turn and crawl only on an occasional basis; and to maintain attention and concentration necessary for tasks which are not detailed or complex" (R. 19). The ALJ also found Ms. Gentle to be restricted from working "in areas of moderate amounts of pulmonary irritants and temperature and humidity extremes" (R. 19). The ALJ found that Ms. Gentle's allegations at the hearing regarding pain, lack of interest in activities and medication side-effects were not fully credible (R. 19). He found that those allegations were either not supported by objective medical evidence in her records or by the presence of aggressive treatment (R. 19). The ALJ also found that Ms. Gentle's

allegations were contradicted by the fact that she had only experienced mild limitations in her daily living activities (R. 19).

In assessing Ms. Gentle's RFC, the ALJ evaluated Ms. Gentle's medical records regarding her right hip and lower back pain, mental health problems with depression and anxiety attacks, medical history of low back pain, asthma, migraine headaches, and noted obesity (R. 18). The ALJ noted that Ms. Gentle's treating physician interpreted the results of her MRI of her lower back to prevent her from lifting heavy objects (R. 18) and that she had received conservative treatment for her back pain (R. 19). The ALJ also noted that Ms. Gentle had received conservative treatment for her asthma (R. 19). With regard to Ms. Gentle's mental impairments, the ALJ found that she experiences mild limitations in her daily activities, mild restrictions in maintaining social functioning, moderate limitations on her ability to maintain concentration, persistence or pace, and that she has experienced no episodes of decompensation in a work-like setting (R. 19). The ALJ noted that Ms. Gentle had been given effective medication for her depression and anxiety symptoms and that, by December 2002, she reported to her psychiatrist that she was feeling better, with her only medication side-effects being the occasional loss of concentration and intermittent constipation (R. 18, 19). The ALJ also noted that the VE testified that, based on the ALJ's assessment of Ms. Gentle's RFC, Ms. Gentle could return to her past relevant work as a lunchroom attendant or deli worker (R. 20). The ALJ concluded that Ms. Gentle could return to her past relevant work, since those jobs did not require the performance of work-related activities precluded by her RFC or her medically determinable impairments (R. 21).

The ALJ considered the April 8, 2003 letter from a psychiatrist, Dr. Burton, asking that Ms. Gentle be allowed childcare assistance on the ground that she was "disabled" by her symptoms of decreased energy, depressed mood, panic/anxiety, and feelings of being overwhelmed (R. 19, 254).

10

The ALJ found that Dr. Burton's opinion was not controlling on the issue of disability, explaining that the disability determination can only be made by the Social Security Commissioner and her delegees; that Dr. Burton's opinion was not accompanied by any objective medical evidence; and that his opinion was contradicted by Ms. Gentle's medical records (R. 19-20).

## II.

We begin with a brief overview of the relevant legal standards. To establish a "disability" under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A)(2004). A claimant must demonstrate that her impairments prevent her from performing not only her past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A). The social security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 (2004). Under this test, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir.1992). A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994). The Court must accept the findings of fact which are supported by "substantial evidence" (42 U.S.C. §§ 405(g) (2004)), defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir.1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir.1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986) (per curiam).

That said, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. See *Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id*; see also *Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See*, e.g., *Zurawski v. Halter*, 245 F.3d

881, 887, 889 (7th Cir.2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000)). This is especially true regarding credibility determinations, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for the credibility finding. *Zurawski*, 245 F.3d at 887. Specific reasons are required so that the reviewing Court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.2000)).

### III.

Ms. Gentle challenges the ALJ's findings on several grounds. *First*, Ms. Gentle asserts that the ALJ failed to consider all of her impairments, or the aggregate effect of these impairments, when he assessed her RFC. *Second*, Ms. Gentle claims the ALJ, in assessing her RFC, discredited her subjective complaints on an insufficient basis. *Third*, Ms. Gentle claims that the ALJ failed to consider whether she could perform the specific demands of her past jobs. We address these challenges in turn.

### A.

Ms. Gentle first asserts that the ALJ did not adequately assess all her impairments. In his opinion, the ALJ found that Ms. Gentle suffers from asthma, low back pain syndrome, hypertension, and depression (R. 17, 21). Ms. Gentle finds fault with this determination, arguing that the ALJ did not include obesity and migraine headaches in considering the severity of Ms. Gentle's impairments (Pl.'s Mem. 5). She also contends that the ALJ improperly failed to consider the aggregate effect of Ms. Gentle's impairments (*Id.* at 5).

### 1.

We begin with the question of obesity. The Social Security Administrator has provided the following guidance on whether or not a claimant's obesity is a "severe" impairment:

13

As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.... There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57,859, 57,862 (Sept. 12, 2002).

Ms. Gentle stands 5'11" tall, and weighed 275 pounds at the time of the hearing (R. 39). The ALJ observed in his opinion that Ms. Gentle's psychiatric records note she is obese (R. 18). In his opening statement at the administrative hearing, Ms. Gentle's attorney argued that her obesity exacerbates her pain symptoms (R. 27). However, at no point in the hearing did Ms. Gentle testify to any symptoms or any limitations on her ability to do basic work activities resulting from her obesity. The burden to prove that Ms. Gentle's obesity constitutes a "severe" impairment was Ms. Gentle's. *See* 20 C.F.R. § 404.1512. Ms. Gentle's medical records contain a notation stating that she appears to be obese, but those records do not indicate that Ms. Gentle's weight -- standing alone -- significantly limits her physical or mental ability to work. Given the lack evidence relevant to this question, the ALJ's conclusion that Ms. Gentle's obesity is not a "severe" impairment is supported by substantial evidence.

An ALJ must consider the disabling effect of a claimant's obesity in combination with her other impairments, regardless of whether that condition alone would be considered "severe," when the evidence in the case fairly raises the issue. *Clifford*, 227 F.3d at 873. In *Clifford*, the claimant's medical records contained numerous references to her "excessive" weight problem, reports that her

microvascular brain stem disease was aggravated by her high fat diet, and recommendations by her treating physician that she lose weight because of her condition. *Id.* In the case at hand, the record contains no evidence of any disabling effects directly attributable to Ms. Gentle's obesity, or any way in which that condition combines with Ms. Gentle's other impairments to create a disabling effect.

An ALJ is not required to address every piece of evidence in the record, so long as he provides "some glimpse into [his] decision to deny benefits." *Zurawski*, 245 F. 3d at 889. Although the ALJ did not provide a detailed discussion of Ms. Gentle's weight problem, he did discuss Ms. Gentle's other impairments that could potentially be exacerbated by that condition (back/leg pain, asthma, and depression) (R. 18-20); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). He noted that Ms. Gentle's treating physicians used only conservative methods to treat her asthma and pain (R. 19). The ALJ's opinion remarked upon the fact that Ms. Gentle's psychiatrist noted her obesity in the context of her depression, but also noted that, according to the most recent psychiatric records available at the time of the hearing, Ms. Gentle reported feeling better and experienced minimal side effects from her medication (R. 18, 19). The ALJ's opinion provides the information necessary to discern how he concluded that Ms. Gentle's obesity did not combine with other impairments to disable her, and to conclude that his opinion was supported by substantial evidence.

## 2.

With regard to Ms. Gentle's assertion that the ALJ erred when he failed to consider evidence that Ms. Gentle suffers from frequent severe headaches, the ALJ need only consider impairments that a claimant actually claims or of which the claimant offers enough evidence to fairly raise the impairment as a basis for a claim. *See* 20 C.F.R. §§ 404.1512(a), 404.1516 (2004); *see also Clifford*, 227 F.3d at 873 (ALJ should evaluate the severity of all impairments (including those not claimed)

fairly raised by the evidence). In her application for disability benefits, Ms. Gentle did not state that her migraine headaches were an impairment contributing to her alleged disability (R. 101). Neither Ms. Gentle nor her attorney raised any claims regarding headaches at the administrative hearing (R. 26-58). Moreover, while the ALJ did note in his opinion that Ms. Gentle's records indicate that she has a history of migraine headaches (as noted by her obstetrician) (R. 18), the record contains no medical evidence that Ms. Gentle's migraine headaches are impairing. The ALJ was therefore not required to make any determinations regarding Ms. Gentle's migraine headaches.

## B.

Ms. Gentle argues that the ALJ failed to adequately assess all factors relevant to her RFC. We are not persuaded by the criticisms leveled by Ms. Gentle.

*First*, Ms. Gentle argues that the ALJ erred in rejecting the medical opinion of Dr. Burton regarding whether or not Ms. Gentle is disabled (Pl.'s Mem. 8). It is true that "a treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Dixon v. Massanari*, 270 F. 3d 1171, 1177 (7th Cir. 2001). However, it is the sole province of the Commissioner to determine whether a claimant is disabled: a claimant is not entitled to disability benefits just because her doctor has offered the opinion that she is "disabled." *Id.* Dr. Burton's letter simply applied the conclusory label of "disabled" to Ms. Gentle without providing – as the ALJ noted (R. 19) – an explanation of what medical evidence led him to that conclusion. The ALJ gave Dr. Burton's opinion that Ms. Gentle is "permanently disabled" reduced weight in his assessment of her RFC, noting that Dr. Burton's April 2003 letter was "not accompanied by objective medical findings or consistent with

16

other evidence of record"[1] (R. 19). And, indeed, Dr. Burton himself observed in January 2003 that Ms. Gentle was "feel[ing] better in general" (R. 238), and concluded that she did not require further medical consultation for two months (R. 239). The ALJ's treatment of Dr. Burton's statement was supported by substantial evidence. *See Jens v. Barnhart*, 347 F. 3d 209, 212 (7th Cir. 2003).

*Second*, Ms. Gentle contends that the ALJ erred in that he did not assess her ability to "respond appropriately to co-workers, supervisors and work pressures" in determining her RFC (Pl.'s Mem. 8). An ALJ must consider all a claimant's impairments, supported by substantial evidence in the record, which might limit a claimant's RFC. *See Young v. Barnhart*, 362 F. 3d 995, 1002 (7th Cir. 2004). Ms. Gentle relies on this proposition from *Young* for her assertion that the ALJ was required to assess the above factors in making his determination of her RFC. In *Young*, the claimant allegedly suffered from problems involving his temper and poor social judgment and, although the ALJ there found that Young suffered from those and other related impairments, the ALJ failed to reference those impairments in determining the claimant's RFC. *See id.* In *Young*, the appeals court held that the ALJ failed to adequately "connect the dots" between the claimant's impairments and the ALJ's RFC findings. *Id.* In contrast, Ms. Gentle never offered any evidence or made any claims that she lacks the ability to respond appropriately to co-workers, supervisors and work pressures (R. 101, 28-58). The ALJ was not required to make any determinations regarding these after-the-fact claims.

*Third*, Ms. Gentle claims that the ALJ erred in finding that her alleged need to sleep during the day -- caused by the side-effects of Prozac, Benadryl, and Vicodin -- was not credible, and did

---

[1] Although the ALJ did not specify which evidence in the record contradicts Dr. Burton's statement, elsewhere in his opinion, the ALJ notes that Ms. Gentle's psychiatric treatment notes indicate that, after receiving medication for depression, Ms. Gentle reported that her symptoms improved (R. 18, 19).

not affect her RFC (Pl.'s Mem. 9). Ms. Gentle did not claim to be disabled by her sleep requirements in her application for benefits (R. 101). At the hearing, Ms. Gentle stated that she becomes very sleepy upon taking anti-depressants and her allergy medication (R. 48-50). While Ms. Gentle's medical records indicate that she was prescribed Benadryl for her allergy symptoms in September 2001 (R. 179) and Prozac for depression symptoms in December 2002 (R. 238), those records do not contain any notation of a prescription for Vicodin for any medically necessary purpose. The ALJ found that Ms. Gentle's claims regarding "medication side-effects" were not credible as she told her treating psychiatrist that she only experienced mild constipation and occasional loss of concentration as side-effects of her anti-depressant medication (R. 19). Dr. Burton's April 2003 letter – upon which Ms. Gentle relies in part – does not cite day-time sleepiness as a basis for disability (or as a problem at all) (R. 254), and the medical evidence from January 2003 shows that she was not feeling as tired as she had in the past (R. 245) and that she was "sleeping less" and feeling "less sedated" (R. 238). The ALJ's determination that Ms. Gentle's claims that she must sleep during the day due to her medication were not credible, and thus did not limit her RFC, is supported by substantial evidence.

Ms. Gentle also claims that the ALJ did not properly consider her claims that she suffers from regular crying spells and anxiety attacks (Pl.'s Mem. 9). In her initial application for benefits, Ms. Gentle did not list either problem as contributing to her claimed disability (R. 101). However, at the hearing, Ms. Gentle testified to suffering from both of these problems (R. 44-46). In his discussion of Ms. Gentle's medical history, the ALJ noted that, shortly after delivering her second child, Ms. Gentle sought psychiatric treatment for her depression symptoms and anxiety attacks, and that Dr. Burton listed Ms. Gentle's "depressed mood" and "panic/anxiety" as contributing to Dr. Burton's opinion that Ms. Gentle is "permanently disabled" (R. 18). The ALJ did not make any

specific findings as to whether Ms. Gentle's crying spells and anxiety attacks created additional limitations on her residual functional capacity. Rather, the ALJ made general findings regarding the functional limitations created by all of Ms. Gentle's mental impairments (R. 19). The ALJ found that Ms. Gentle has mild limitations on her daily living activities and social functioning, that her ability to maintain concentration, persistence, or pace is "moderately limited," and that she has not experienced any decompensation or any exacerbation of symptoms that has caused her to withdraw from situations while in a work-like setting (R. 19). These four broad functional areas have been identified by the Social Security Administration as contributing to the severity of a claimant's mental impairments. *See* 20 C.F.R. §§ 404.1520a; Subpt. P, App. 1, 12.00 (C) (2004). The ALJ found that Ms. Gentle's mental impairments do not create functional limitations beyond the inability to maintain the attention and concentration necessary for detailed or complex tasks (R. 19). *See* 20 C.F.R. §§ 404.1520a; Subpt. P, App. 1, 12.00(c) (2004). This finding encompasses all of Ms. Gentle's alleged mental impairments, including her crying spells and anxiety attacks.

The ALJ also observed that Ms. Gentle's allegations that she cannot perform any sustained work activity due to a "lack of interest in activities" (presumably referring to depression) are not fully credible because her symptoms have responded to prescribed medication, have not required aggressive treatment, and "have not been documented by medical findings to be so severe as to produce the symptoms as alleged [at the hearing]" (R. 19). From these two findings, we can "glimpse" the ALJ's reasoning with regard to the evidence of crying spells and anxiety attacks Ms. Gentle presented at the hearing and how that evidence factored into his opinion of Ms. Gentle's RFC. *See Zurawski*, 245 F.3d at 889. Thus, the conclusion that Ms. Gentle's problems with crying spells and anxiety attacks did not create additional limitations on her RFC is supported by substantial evidence.

*Fourth,* Ms. Gentle also asserts that the ALJ inadequately articulated his reasons for finding that Ms. Gentle's subjective complaints of pain were not credible (Pl.'s Mem. 10). Ms. Gentle asserts that the ALJ erred in failing to make a specific finding regarding how her impairments affect her ability to sit and stand. Ms. Gentle's application for benefits states that she has difficulty standing for long periods of time due to her leg and back pain (R. 101). At the administrative hearing, in addition to testifying to being unable to stand for long periods of time, Ms. Gentle also testified to being unable to sit or walk for extended periods due to leg and back pain (R. 40-43).

The ALJ did not specifically address Ms. Gentle's ability to sit and stand (R. 16-21). However, the ALJ's opinion does discuss Ms. Gentle's allegations regarding her back and leg pain which, according to her claims, are the factors that contribute to her inability to sit or stand for extended periods (R. 19). The ALJ found that Ms. Gentle's subjective complaints of pain were not credible because they were contradicted by objective medical evidence, the absence of more aggressive treatment, and her normal daily activities (R. 19). The ALJ's opinion states, "...these symptoms have not required hospitalization, surgical intervention or other aggressive treatment...have not been documented by medical findings to be so severe as to produce the symptoms as alleged and do not prevent the claimant from performing an extensive range of daily activities including taking care of two small children, cooking, cleaning, and shopping." (R. 19). We also note that the April 2002 report of Dr. McShane found that Ms. Gentle's back condition "prevents her from lifting heavy objects," but did not cite any effect on her ability to sit or stand (R. 246). Moreover, the consultative reports from December 2001 and March 2002 – cited by the ALJ (R. 20) – find no significant limit on Ms. Gentle's ability to sit or stand (R. 198-99). While the ALJ's credibility finding was not accompanied by an extensive discussion of the specific medical evidence contradicting her claims, the body of the ALJ's opinion does refer to such evidence (that

she received conservative treatment for her hip pain and that her MRI revealed a small disc protrusion that only prevents her from lifting heavy objects) (R. 18).[2] We find the ALJ's credibility finding is supported by substantial evidence.

## C.

Ms. Gentle claims that the ALJ should not have relied on the vocational expert's testimony in order to conclude that Ms. Gentle is capable of performing her past work. We do not find persuasive the arguments Ms. Gentle asserts in support of this claim.

*First*, Ms. Gentle claims that the hypothetical question the ALJ posed to the VE did not include all her impairments. Specifically, she claims that the ALJ should have stated that Ms. Gentle has "mild restrictions" in social functioning and is "moderately limited" in her ability to maintain concentration, persistence and pace (Pl.'s Mem. 11). When an ALJ poses a hypothetical question to a VE, that question should reflect a claimant's work-related impairments. *See Cass v. Shalala*, 8 F. 3d 552, 555 (7th Cir. 1993). The question the ALJ posed to the VE was based on the ALJ's determinations regarding Ms. Gentle's RFC, and contained a clause limiting the hypothetical claimant's ability to maintain attention and concentration to that level necessary to perform tasks that are neither detailed nor complex (R. 21, 52-53). Thus, the hypothetical question did incorporate Ms. Gentle's limitations on concentration, persistence, and pace. *See* 20 C.F.R. § 404.1520a (2004); 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (C) (3) (2004). With regard to Ms. Gentle's limitations

---

[2] The record reflects that Dr. Lee Ann Meyers, a neurologist Ms. Gentle saw soon after the alleged date of onset, indicated that Ms. Gentle should find a job that does not involve standing for the duration of her second pregnancy (R. 169). She is the only physician to have ever placed any restrictions (temporary or permanent) on Ms. Gentle's ability to stand for extended periods. After Ms. Gentle delivered her child, she had an MRI done of her back. Dr. McShane, who interpreted the MRI results, stated that the results indicated that she should avoid lifting heavy objects (R. 246). Dr. McShane told Ms. Gentle's treating psychiatrist that Ms. Gentle's MRI indicated "no significant abnormality requiring additional treatment or disability (R. 241).

on "mild restrictions" on social functioning, it is generally proper to consider any "mild" limitations to have a minimal effect on a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1520a (2004). With regard to Ms. Gentle's claims that the ALJ should have included Ms. Gentle's anxiety attacks, crying spells, and need to sleep for several hours during the day, again, for the reasons stated above, the ALJ's finding that these alleged ailments are not "severe impairments" is supported by substantial evidence. Thus, the ALJ was not required to include these factors in the hypothetical question posed to the VE as they were not relevant to the determination of whether Ms. Gentle could perform her previous jobs. *See Cass*, 8 F. 3d at 555.

*Second*, Ms. Gentle also claims that the ALJ's hypothetical question to the VE did not properly take into account Ms. Gentle's previous participation in special education courses. Although it is unclear from her brief exactly how she believes her educational experience has been misrepresented, vocational factors such as education are not relevant to the question of whether or not a claimant can perform her past relevant work. 20 C.F.R. § 404.1560 (b) (3) (2004). Moreover, while Ms. Gentle indicated difficulty in reading, the record shows that she received "Bs" and "Cs" in her high school reading and English courses (R. 147-49). In any event, Ms. Gentle's education deficits were addressed in the portion of the hypothetical limiting the available work to that which did not require performance of "detailed or complicated tasks" (R. 52).

*Third*, Ms. Gentle claims that the ALJ failed to evaluate Ms. Gentle's current capacity to perform the specific physical requirements of her past jobs. In determining whether a claimant can perform her past relevant work, an ALJ may rely on a vocational expert's testimony in response to "a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20

C.F.R. § 404.1560 (b) (2) (2004). "The issue is not whether the applicant for benefits can return to the precise job [she] held, which is hardly likely to have been held open for [her], but whether [she] can return to a "job" [she] held that exists at other employers." *Smith v. Barnhart*, No. 03-3498 slip op. at 4, 2004 WL 2382142, *2 (7th Cir. Oct. 26, 2004).

Here, the ALJ presented the VE with a hypothetical question based on Ms. Gentle's RFC (R. 52-53). In response, the VE testified that Ms. Gentle's work as a lunchroom attendant and a deli worker would both be considered "light and unskilled," work that could be performed by a person with Ms. Gentle's limitations (R. 52). The hypothetical question the ALJ posed to the VE specifically referred to Ms. Gentle's physical and mental abilities (R. 52-53). The VE was present while Ms. Gentle testified regarding the specific details of Ms. Gentle's previous jobs. (R. 28-30, 35, 50). Since Ms. Gentle offered no evidence indicating that her physical impairments were more severe at the time of the hearing in comparison to when she last worked, the ALJ's hypothetical question to the vocational expert was sufficient to elicit the expert's opinion as to whether Ms. Gentle could perform her previous relevant work. *See Nolen v. Sullivan*, 939 F. 2d 516, 519 (7th Cir. 1991). Moreover, there is no evidence that the specific requirements of Ms. Gentle's previous jobs as a lunchroom attendant or deli worker would require any physical or mental abilities beyond those of which the ALJ found Ms. Gentle to be in possession. *See Smith*, No. 03-3498, slip op. at 4.

## CONCLUSION

We have little doubt – as did the ALJ – that Ms. Gentle is afflicted with impairments and other circumstances that create an unfortunate life situation. But not every set of impairments meets the statutory definition of disability, and to Ms. Gentle's misfortune, the ALJ's conclusion that Ms. Gentle's condition did not meet that statutory definition was supported by substantial evidence and

thus must be affirmed. For the foregoing reasons, Ms. Gentle's motion (doc. # 18) is denied and the Commissioner's motion summary judgment (doc. #19) is granted.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: November 9, 2004**