

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE GENTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04 C 1766 |
| ) | Magistrate Judge Schenkier |
| JO ANNE BARNHART, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Nicole Gentle, has filed a motion seeking attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (doc. # 32). This motion is based on the contention that the Commissioner's determination denying her social security benefits ("SSI"), which initially was affirmed by this Court, 2004 WL 2600133 (N.D. Ill. 2004), but then reversed by the Seventh Circuit and remanded for further proceedings, 430 F.3d 865 (7th Cir. 2005), was without "substantial justification."

Plaintiff's motion initially sought an award of fees under EAJA in the amount of $34,966.88. Plaintiff since increased her fee request to $36,054.88 (to account for plaintiff's attorneys' fees incurred in filing the EAJA reply brief). For the reasons stated below, we grant plaintiff's motion, but award her attorneys' fees in the reduced amount of $26,136.25.

**I.**

EAJA provides that a successful litigant against the federal government is entitled to recover attorneys' fees if: (1) she is a "prevailing party"; (2) the government's position was not "substantially justified"; (3) there existed no special circumstances that would make an award unjust; and (4) she filed a timely application with the district court. 28 U.S.C. § 2412(d)(1)(A), (B).

*See also Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006). The Commissioner has the burden of establishing that her position was substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). In this case, the parties agree that the only issue in this four-part test is whether the government's position was "substantially justified."

The answer to the substantial justification question is not an automatic "yes" simply because plaintiff won a remand, since the EAJA is not an automatic fee-shifting statute. *See Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). Thus, it is error to equate a ruling against the government on the merits with a finding that its position was not "substantially justified" for purposes of the EAJA. *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988) ("the fact that one other court agreed or disagreed with the government does not establish whether its position was substantially justified"). *See also U.S. v. Hallmark Const. Co.*, 200 F.3d 1076, 1079-80 (7th Cir. 2000)(*hereinafter "Hallmark"*)(the government can take a position that is not substantially justified, yet win; it can also take a position that is substantially justified, yet lose). Instead, substantial justification is a question of reasonableness. *Pierce*, 487 U.S. at 556.

To be substantially justified, the Commissioner's position (his or her adoption of the determination of benefits made by the Administrative Law Judge ("ALJ")) must have a reasonable basis in fact and law, and there must be a reasonable connection between the facts in the record and the legal theory adopted. *Golembiewski*, 382 F.3d at 724. *See also Pierce*, 487 U.S. at 565. Put differently, the standard of "substantially justified" is satisfied if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action. *Pierce*, 487 U.S. at 565.

The substantial justification standard is distinct from the "substantial evidence" standard used to determine whether to sustain an ALJ's ruling on the merits of a disability claim. The two standards are used at different stages of the proceeding, and each has different functions. *Hallmark*, 200 F.3d at 1080 (EAJA fee determination requires district court to re-examine legal and factual circumstances of case from different perspective than used at any other stage of proceeding).

> Under the substantial evidence standard, the district court must consider evidence that both supports and detracts from the Secretary's position. In contrast, under the substantial justification standard, the district court only considers whether there is a reasonable basis in law and fact for the position taken by the Secretary. Because the standards are neither semantic nor legal equivalents, the Secretary can lose on the merits of the disability question and win on the application for attorney's fees.

*Welter v. Sullivan*, 941 F.2d 674, 676 (8th Cir. 1991) (citation omitted).

Under EAJA, attorneys' fees may not be awarded if either the Commissioner's pre-litigation conduct *or* her litigation position lacked substantial justification. *Golembiewski*, 382 F.3d at 724. The ALJ's decision is considered part of the Commissioner's pre-litigation conduct. *Id.* When errors are made by the ALJ, the Commissioner is held accountable. *Cummings v. Sullivan*, 950 F.2d 492, 496 (7th Cir. 1991). "While the parties' postures on individual matters may be more or less justified, the EAJA – like other fee shifting statutes – favors treating a case as an inclusive whole, rather than atomized line items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990). Thus, this Court is required to make a global assessment to determine whether the government was substantially justified in continuing to push forward at each stage. *Hallmark*, 200 F.3d at 1081. This global assessment includes consideration of the process by which that decision was reached. *See generally Williams v. Apfel*, No. 99 C 1139, 2001 WL 199505, *2 (N.D. Ill. 2001).

In making this global assessment, the district court's determination is discretionary. *Golembiewski*, 382 F.3d at 723. In exercising its discretion in a case where, as here, the district

court sustained an ALJ's decision but the appeals court reversed it, we focus on the appeals court decision reversing and remanding the case and not on our underlying opinion. *Smith ex rel. Smith v. Apfel*, 2001 WL 199505, *3 (N.D. Ill. 2001) (court of appeals ruling is the "most powerful available indicator[] of the strength, hence reasonableness, of the ultimately rejected position"). An appeals court's use of strong terms in rejecting an ALJ's opinion is evidence that the positions taken in the agency were unreasonable and thus favors an award of fees under the EAJA. *Golembiewski*, 382 F.3d at 724 ("Strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees"). *See also Wilder v. Chater*, 166 F.R.D. 23, 24 (N.D. Ill. 1996) (words and tone of words reflected appeals court view that government position fell well below threshold of substantial justification). Conversely, an appeals court decision indicating the case to be a close one supports the denial of fees. *See, e.g., Cummings v. Sullivan*, 950 F.2d 492, 498 (7th Cir. 1991) (finding that "the closeness of the question is, in itself, evidence of substantial justification").

Finally, there are policy considerations involved in the award of attorneys' fees under the EAJA. The potential threat of having to pay for the litigation costs of the opposing party may encourage government agencies to investigate, prepare and pursue litigation against private parties in a professional and appropriate manner. Likewise, the potential for recovering the expenses a private party puts forward to oppose the government encourages members of the public to assist in the "valuable public service [of] improving the efficiency of government operations." *Hallmark*, 200 F.3d at 1080.

4

## II.

In determining whether attorneys' fees should be awarded in this case, the parties focus (as did the appeals court) on the Commissioner's pre-litigation position in the agency. In reversing and remanding the case, the Seventh Circuit focused on two particular errors it identified in the ALJ's analysis: (1) that the ALJ's "analysis of the evidence was deficient[,]" because he "casual[ly] equat[ed] . . . household work to work in the labor market"; and (2) that the ALJ "failed to consider [Ms.] Gentle's disabilities in combination" (*e.g.*, the effect of her obesity on her disability of disc disease, which causes her pain in sitting, standing, *etc.*). *Gentle*, 430 F.3d at 867-68. Given that focus, the threshold question this Court must answer is whether, based on the Seventh Circuit's opinion and analysis of the ALJ's decision, the Commissioner was "substantially justified" in affirming the ALJ's decision. For the reasons we explain below, we conclude that the Commissioner did not have substantial justification for her pre-litigation position.

## A.

The Seventh Circuit first found that the ALJ's analysis of the evidence was "deficient[,]" because he "casual[ly] equat[ed] . . . household work to work in the labor market." *Gentle*, 430 F.3d at 867. The appeals court stated that Ms. Gentle's ability to take care of her children did not and could not equate to the residual functional capacity ("RFC") she would need to perform substantial gainful activity in the labor market. *Id.* The court explained that the ALJ's comparison between household work and the ability to function in the labor market was "deficient" because, although Ms. Gentle may have been impelled to "heroic efforts" to care for her two small children, there was evidence that she could not stand "much or most of the time" during a forty-hour week; thus, her performance of chores at home did not show that Ms. Gentle retained the residual functional capacity

5

capacity to perform her past work as a lunchroom attendant and deli worker. *Id.* at 867. In this regard, the appeals court cited the "uncontested evidence not mentioned by the administrative law judge [that] reveals that she performs these [household] chores with difficulty, and with the aid of her sister, a neighbor, and another woman." *Id.* at 876.[1]

The Seventh Circuit also criticized the ALJ's use of plaintiff's activities at home as a basis upon which to find her complaints of pain and inability to stand not credible. *Id.* at 867. The ALJ found that Ms. Gentle's subjective complaints of back and leg pain (resulting from the underlying disc disease alleged to be her disability) were not credible (Tr. 19). In his written decision, the ALJ stated that his credibility determination was based on: (1) objective medical evidence that contradicted Ms. Gentle's subjective complaints; (2) the absence of aggressive treatment for the pain (*e.g.*, hospitalization or surgical intervention); and (3) Ms. Gentle's daily activities (Tr. 19). The appeals court focused on the third reason, daily activities, as a deficient basis for concluding that Ms. Gentle's allegations of pain were not credible. *Gentle*, 430 F.3d at 867.

The Commissioner argues that the ALJ's reliance on plaintiff's household work and care of her children was reasonable within the context of the regulation that requires an ALJ to consider a claimant's ability to perform daily activities in evaluating affective disorders. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00(c)(2006) (Def.'s Mem. at 4-5). But, this argument fails to address the real issue, because plaintiff's claimed "affective disorders" would only include Ms. Gentle's alleged depression and other mental problems, such as lack of concentration and focus, and not her complaints of pain. Perhaps recognizing that point, the Commissioner also argues that the

---

[1] The appeals court noted that applicable regulations provide that a person is not disabled if she is working and engaged in "substantial gainful activity," but found those regulations inapplicable because performing household chores is not working "in the labor market." *Gentle*, 430 F.3d at 867 (citing cases).

6

regulations instruct the ALJ to consider a claimant's daily activities when assessing credibility regarding pain and other symptoms. *See* 20 C.F.R. §§ 404.1529 (c)(3)(I), 416.929(c)(3)(I) (Def.'s Mem. at 5). Recent case law in the Seventh Circuit is consistent with that position. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). However, as we read the appeals court decision, the problem was not that the ALJ considered Ms. Gentle's household activities in addressing her disability claims. The problem, in the Seventh Circuit's view, was both his selective reading of the evidence (reflected by the ALJ's failure to discuss Ms. Gentle's difficulty in performing household work), and his equating the ability to do household work with performing labor in the workplace.

The fact that the appeals court remanded the case for further proceedings and did not, instead, simply enter a finding of disability indicates that the Seventh Circuit did not deem the record evidence to be so clearly in Ms. Gentle's favor as to preclude the possibility that she could be denied a finding of disability.[2] Here is where the difference between substantial evidence and substantial justification plays out.

Although a decision by the ALJ to deny benefits arguably may have substantial evidence to support it, the decision cannot stand if the result was reached in a procedurally inappropriate way. The Seventh Circuit has made clear that an ALJ has the duty to explain how he reaches a result, to enable the reviewing court to assess whether substantial evidence supports it. *Zurawski v. Halter*,

---

[2] That said, we do note that the penultimate paragraph in the Seventh Circuit opinion suggests that the appeals court viewed the more likely finding on remand as one of disability:

> Given her disk disease as aggravated by her obesity, her problems of concentration, and her allergies, work in the supermarket or lunchroom would be difficult and stressful for her. Now add to that depression and anxiety, and how likely is it that she could work full time, day after day, week after week? That is not for us to decide but, in the first instance at least, for the administrative law judge to decide; as with obesity, he has not done so.

*Gentle*, 430 F.3d at 868-69.

7

enable the reviewing court to assess whether substantial evidence supports it. *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001). It is not enough for the Commissioner, in later attempting to defend the ALJ's decision, to offer arguments, or to cast about in the administrative record for evidence never cited by the ALJ. Nor is it permissible for this Court, on review, to supply a ground for the Agency's decision that the ALJ did not provide. *See Sayles v. Barnhart*, 00 C 7200, 2002 WL 989455, *2 (N.D. Ill. 2002) (citing *O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir. 1991)). Thus, if the way in which the determination is reached cannot be reasonably (or rightly) relied on, then the Commissioner's position is not substantially justified. Process matters.

In this case, we read the appeals court as saying that if Ms. Gentle could perform her past relevant work, then the ALJ did not explain sufficiently why he concluded Ms. Gentle could. In considering Ms. Gentle's credibility, the ALJ never explained what weight he gave to the objective medical evidence as opposed to his view of Ms. Gentle's apparent abilities to work at home. Without such explanation, a reviewing court cannot discern how much the ALJ's determination was based on his perception that Ms. Gentle's ability to work in the home would equate, for RFC purposes, with her ability to work in the marketplace. That equation was unexplained, and thus was concluded by the appeals court to be "casual" and erroneous. For the reasons we have explained above, we find the Commissioner's position on this point to have been without substantial justification.

### B.

The appeals court also found that the ALJ "failed to consider [Ms.] Gentle's disabilities in combination" (*e.g.*, the effect of her anxiety, depression and obesity on her disability of disk disease, which causes her pain in sitting, standing, *etc.*). *Gentle*, 430 F.3d at 867-68. In particular, the court

8

found that the ALJ failed to consider the "incremental effect on the disability" (namely, disc disease) stemming from the conditions of anxiety, depression and obesity claimed by Ms. Gentle. *Id.* In this segment of the opinion, the appeals court focused on how Ms. Gentle's obesity could potentially affect her back impairment and thus her ability to stand and sit. *Id.* The appeals court's discussion on this point is brief, but its views can be summed up by its rhetorical question at the end of the opinion: "How likely is [it] that [Ms. Gentle] could work full time, day after day, week after week?" *Id.* at 869. The Court of Appeals concludes: "That is not for us to decide but, in the first instance at least, for the administrative law judge to decide, as with obesity, he has not done so." *Id.* at 869.

It is true that the ALJ did not, as the appeals court noted, discuss how Ms. Gentle's documented obesity would combine with her impairments to exacerbate those impairments. He did make specific findings regarding the underlying impairments that plaintiff claimed could potentially be exacerbated by back/leg pain; and, he does acknowledge that the medical record contains evidence of obesity (Tr. 18-20). But, he did not specifically address obesity or its effect on any of her impairments.

In fairness to the Commissioner, it was Ms. Gentle's burden of proof at Step 4 – not the ALJ's – to prove that she could not perform her prior work activity. Thus, although an ALJ must consider the disabling effect of a claimant's obesity in combination with her other impairments when the evidence in the case fairly raises that issue, *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000), the question in this case is whether Ms. Gentle fairly raised that issue (*e.g.*, that Ms. Gentle's obesity exacerbated her pain symptoms). Ms. Gentle's attorney raised the issue during opening argument (Tr. 27). But, at no point during the hearing did Ms. Gentle testify (even on cross-examination (Tr. 48-50)) to any symptoms or any limitations on her ability to do basic work activities necessary to

9

hold her previous jobs that resulted from her obesity; nor was there any objective medical evidence to support that conclusion.

However, plaintiff points out that consideration of the combined effect of obesity on her other noted impairments was required by Social Security Ruling ("SSR") 02-1p, which is binding on the Commissioner (Pl.'s Resp. at 6). 20 C.F.R. § 402.35(b). This is true. SSR 02-1p states:

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight bearing joint may have more pain and limitation than might be expected from the arthritis alone.

SSR 02-1p also states that a person of Ms. Gentle's stature (5'11) and weight (275 lbs.), with a body mass index ("BMI") of 35-39.9, has level II obesity. There was evidence in the record to show that Ms. Gentle had a BMI of 38.4, and thus met the regulatory standard for level II obesity. Thus, SSR 02-1p required the ALJ to consider the impact of the plaintiff's obesity at each step of the evaluation process, including the determination of her RFC at Step 4. With a doctor who said Ms. Gentle was obese, we believe the issue was fairly raised for the ALJ's consideration.

Plainly, so did the Seventh Circuit. The appeals court found that the ALJ "failed to consider" the issue of obesity. *Gentle*, 430 F.3d at 867-68. The language and tone of this opinion could not be more strong. Thus, it is clear to this Court that the appeals court found the issue fairly raised, and did not find the ALJ's failure to consider the effect of obesity in combination with her other impairments to be "reasonable" or even reasonably debatable.

The Commissioner, however, argues that "as in *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir.2004), the ALJ's RFC determination accounted for limitations as determined by plaintiff's treating physician, who knew of her obesity and other impairments, . . ." (Def.'s Mem. at 6). The

Commissioner contends that obesity was therefore "considered" in combination with plaintiff's other impairments, because the ALJ considered the doctors' opinion (although not specifically addressing obesity) in his RFC assessment (*Id.*) (citing *Skarbek*, 309 F.3d at 504).

We disagree. Although the *Skarbek* court found that the references to the claimant's weight in the medical records was sufficient to alert the ALJ to the condition of obesity (despite the claimant's failure to do so), the appeals court there also found that "obesity would not affect the outcome of th[e] case." *Id.* Here, of course, the appeals court said something far different: it plainly suggests that consideration of Ms. Gentle's obesity *could* affect the outcome. *Gentle*, 430 F.3d at 868-69. Thus, on this point as well, we conclude that the Commissioner's position lacked substantial justification.

## C.

After careful review of the administrative record and the Seventh Circuit's opinion, we conclude that our discretion is most wisely exercised by awarding fees. There is nothing in the appeals court decision that suggests it considered this case to be a close one. As we have explained, the Seventh Circuit opinion criticizes the "casual" equation by the ALJ of household chores and workplace activity. The court also found fault with the ALJ's failure to consider the cumulative effect of Ms. Gentle's obesity on her other impairments – which the Seventh Circuit found directly contrary to governing case law, *see Gentle*, 430 F.3d at 868, and which also is contrary to the Commissioner's own regulations. Moreover, the policy considerations underlying EAJA, cited above, support awarding fees. An award of fees in these circumstances will have the salutary effect of promoting heightened care in considering claimants' cases, in assessing the record, and in explaining the decision – all of which is calculated to increase the fairness and accuracy of results.

11

Accordingly, this Court finds that EAJA fees are justified because the Commissioner lacked substantial justification for its decision to adopt the ALJ's determination denying benefits.

## III.

Given that finding, we now move to the issue of the amount of attorneys' fees requested by Ms. Gentle's counsel, and the objections raised by the Commissioner to that request. As indicated above, the plaintiff must make a good faith effort to prove that the number of hours and the fees charged for those hours is not excessive, redundant or unnecessary. *Hensley*, 461 U.S. at 434.

In the initial motion for fees, counsel for Ms. Gentle requested a fee award of $34,966.88. This award is based, in part, on time expended by three different attorneys: Mr. Barry Schultz; Mr. Hank Rose (a contract attorney); and Ms. Barbara Borowski (Mr. Schultz's associate). Each attorney billed time at an hourly rate of $152.50. The award is also based on time billed by a paralegal at a rate of $85.00 per hour (Pl.'s Mot., ¶¶ 14-15). In Ms. Gentle's reply brief to the Commissioner, however, counsel seeks a rate of $160.00 per hour for attorney time (Pl.'s Reply Mem. at 10)

The body of plaintiff's motion does not disclose the number of hours for which compensation is sought, but that information is found in two exhibits to the motion. Exhibit B is a time log for Mr. Schultz and Mr. Rose that dates from February 19, 2004 through December 7, 2005 (Schultz) and from June 11, 2004 through December 13, 2005 (Rose). Exhibit C is a time log for Ms. Borowski and dates from December 16, 2004 through May 18, 2005. We note that the Appeals Council in the SSA issued its final determination, which became the final decision of the Commissioner, on February 3, 2004. Thus, these time logs reflect attorneys' fees incurred after the ALJ's decision became the final decision of the Commissioner.

From Exhibit B, we can determine that Mr. Schultz (with whom plaintiff has a contingency fee agreement) spent 12.6 hours on this case from February 19, 2004 through December 7, 2005 in connection with the district court proceedings. Mr. Hank Rose, who does contract work for Mr. Schultz's law firm (Pl.'s Resp. at 8, n.3), totals his hours on the case at 38.5 hours in the district court. In Exhibit C, Ms. Borowski, an associate with Mr. Schultz's law firm, totals her hours on the case at 120.00 hours for appellate work; but, our calculation of her hours is 120.25.[3] Mr. Schultz indicates that he spent an additional 41.4 hours on the appeal. Those time records add up to a total of 51.10 hours in the district court and 161.65 on appeal, for a total of 212.75 hours.[4] Also included in Exhibit B are references to a "JMG" with time notations. The plaintiff's counsel does not identify who JMG refers to, but the Commissioner's brief indicates that the JMG initials represent the paralegal time counsel identifies in the opening motion, for which plaintiff seeks $85.00 per hour.

At the threshold, we note that the Commissioner does not quarrel with the hourly rate of $152.50 initially sought by plaintiff (Def.'s Mem. at 13). We will apply that rate, rather than the $160.00 rate sought for the first time in plaintiff's reply memorandum, because the plaintiff offers

---

[3] We note that the Commissioner's calculation of 120.25 hours for Ms. Borowski is different than the handwriting at the bottom of Ex. C, which looks like 120.00 hours. Our calculation of her hours is also 120.25.

[4] We note that the Commissioner calculates the hours spent on each phase of the litigation (and by each person) differently then we have calculated them above. For example, in the district court, the Commissioner totals plaintiff's attorney hours at 48.1 hours (11.1 hours for Mr. Schultz and 37 hours for Mr. Rose), and 1.5 paralegal hours. The Commissioner totals plaintiff's attorney hours for the appellate litigation as 133.85 hours (120.25 hours for Ms. Borowski; 13.6 hours for Mr. Schultz) (Def.'s Mem. at 8, citing Ex. B at 1-2, 02/19/04-10/7/04).

The Court will not use the calculations of either party; instead, we base the award granted here on the calculations we have derived from the time records. To summarize attorney hours (because there is no real dispute about paralegal time): based on Exhibit B, Mr. Schultz spent 12.6 hours and Mr. Rose spent 38.5 hours in the district court, for a combined total of 51.1 hours; based on Exhibits B and C, Mr. Schultz billed 41.4 hours and Ms. Borowski billed 120.25 hours for the appellate work, for a total of 161.65 hours. For the reasons discussed *infra*, we find that some reduction to these hours is appropriate.

no citation to any authority identifying $160.00 as the current EAJA rate or explaining to the Court when this asserted rate went in to effect.

The Commissioner does object to the number of hours claimed by plaintiff's counsel, arguing that they are excessive (*Id.* at 8). In particular, the Commissioner argues that the hours claimed are excessive based on her theory that plaintiff's counsel made an inefficient use of resources (*Id.* at 9-12). The Commissioner begins her argument by breaking down the total hours requested into two segments: time in the district court and time in the court of appeals. Below, we address these two segments of litigation separately.

### A.

As for the district court litigation, the Commissioner argues that much of the time counsel spent on the briefing was excessive and redundant based on the arguments previously made by Mr. Schultz to the Appeals Council at the administrative level. The Commissioner argues that Mr. Schultz had familiarity with the case and many of the arguments made in the district court were like those argued to the Appeals Council; thus, it was an inefficient use of resources to give the primary drafting responsibility for the district court briefing to Mr. Rose, because it duplicated previous efforts (Def.'s Mem. at 9-10, comparing Pl.'s Mem. In Support of Sum. Judgment at 4-13, with Tr. 269-72)). The Commissioner argues that because the issues were "routine" and the transcript was smaller than normal, this Court should reduce the hours requested for Mr. Rose's time by one-third (Def.'s Mem. at 10).

We agree with the Commissioner regarding the overlap of issues and arguments. Although it is acceptable for Mr. Schultz to delegate brief writing to someone other than himself, when he does so he cannot expect to charge the government for the time it takes the new attorney to "get up to

14

speed" on the case. For example, the 10 hours that Mr. Rose charges to make an abstract of the administrative record Mr. Schultz put together – and was therefore familiar with – is a duplicative expense that is not reasonable under EAJA standards. Moreover, we find the 1.5 hours that Mr. Rose spent on review of the district court's opinion to be excessive and unnecessary since he did not participate in writing or reviewing the appellate briefs. Thus, we will cut Mr. Rose's time down by 11.5 hours from 38.5 hours to 27 hours total. We will not reduce the 12.6 hours Mr. Schultz billed to review Mr. Rose's work. Thus, for attorney time in the district court, we will award EAJA fees for 39.6 hours.

## B.

As for court of appeals time, the Commissioner requests a fifty percent reduction in hours for Ms. Borowski's time from 120.25 hours to 60.13 hours (Def.'s Mem. at 12). The Commissioner's argument is based both on an alleged inefficient use of resources, and comparison between the hours claimed in this case with the hours claimed by Mr. Schultz and others in other EAJA cases.

For example, the Commissioner notes that Mr. Schultz sought fees for a successful appeal in *Crosby v. Halter,* 152 F.Supp.2d 955, 958 (N.D. Ill. 2001), where he was awarded fees for 111 total hours (*Id.* at 12). The Commissioner argues that plaintiff's request for fees based on 170 hours (which we calculate to be 161.65 hours) "rival[s]" other cases with high fee awards. *See, e.g., Palmer v. Barnhart,* 227 F. Supp.2d 975, 978-79 (N.D. Ill. 2002) (district court awarded fees for 39 hours in district court and 73.8 hours in appellate court, for a total of 113 hours after reducing hours spent by a law student by fifty percent (from 18 to 9 hours) on theory that it would have been more efficient for lead attorney to draft brief himself) (*Id.* at 11). The Commissioner points out that Ms.

15

Borowski was admitted to the bar in November 2004 (*Id.* at 12). Thus, argues the Commissioner, when she wrote the appellate briefs from January-May 2005, Ms. Borowski had been an attorney for less than one year (*Id.*). Because Mr. Schultz is far more experienced as an attorney as well as more knowledgeable about this case, argues the Commissioner, he could have written the appellate briefs more efficiently and in less time than Ms. Borowski (*Id.* at 11-12).

We agree. In many instances, the additional time spent by a less experienced attorney may be offset by the lower billing rates charged by the less experienced attorney. But, here, because the parties agree that Mr. Schultz's and Ms. Borowski's time is compensated at the same rate, the question of how many hours were spent by whom takes on heightened importance.

We find that 120.25 hours spent by Ms. Borowski to brief the appeal – especially when combined with the 15.1 hours spent by Mr. Schultz reviewing and revising her work – is an inordinately large amount of time to charge for such an assignment. In *Palmer*, which involved a much larger record (twice as big), the district court awarded fees for 73.8 hours in the appellate court. Here, the fee request seeks to charge the government for hours spent by a young associate to learn and brief a case that the lead attorney already understood. While a senior attorney may delegate work to a less experienced attorney, we do not think this partner should expect the client, or here the government, to pay more for the young associate's time than he would charge if he were doing the work himself. Plaintiff's counsel has not shown this Court, as it is his burden to do, why fees for 161.65 hours of work on appeal are reasonable in light of prior EAJA awards in this district or in the particular circumstances of this case.

The Commissioner argues that we should reduce the fees awarded for the total appellate work from 161.65 hours to 113.3 hours (Def.'s Mem. at 12). But, plaintiff's counsel suggests that any

reduction in Ms. Borowski's time should be more "modest," and no more than ten percent "or so," a calculation which would reduce her hours to approximately 108 hours total (Pl.'s Resp. at 12),[5] for a total of 149.40 hours on appeal (including Mr. Schultz's time). Plaintiff argues that the Commissioner's suggested fee award for both Mr. Schultz and Ms. Borowski (113.3 hours) is too low, and that "[t]he Commissioner is not entitled to have the most experienced attorney in the office handle every brief that is filed in that office" (Pl.'s Resp. at 11).

The plaintiff is correct about this latter point, as we already have pointed out. But, we still think that Mr. Schultz should not charge more for using an associate than he would charge for doing the work himself. Moreover, we would not expect Mr. Schultz to seek to charge the government for time Ms. Borowski spent to educate herself on such things as "reading 7th Cir. brief examples" (*see* Ex. C., 12/30/04). Based on our own experience and review of the appellate briefing, we conclude that Ms. Borowski's time should be reduced to 80 hours. This number represents two weeks of dedicated full-time work (or two 40 hour weeks), and the average amount of time we think it would take to write the two briefs submitted in this case. The opening brief was approximately 35 pages, and the reply was 16 pages. Reducing Ms. Borowski's time by 40.25 hours eliminates the 19 hours she spent in familiarizing herself with the case, as well as the inefficiencies we believe reflect her inexperience. The time logged for Mr. Schultz on appeal will not be reduced. We note that of the 41.4 hours Mr. Schultz charges for the appellate work, 22.3 hours were spent preparing for oral argument, which Mr. Schultz handled personally. He will be awarded fees for all of this time. The

---

[5] In plaintiff's response brief (Pl.'s Resp. at 11-12), counsel argues that any reduction of Ms. Borowski's time should be modest, in the range of ten percent, given the hours approved in *Gibson-Jones v. Apfel*, 995 F. Supp. 825, 827 (N.D. Ill. 1998). We reviewed *Gibson* and find nothing analogous there to this case: in that case, there was a record two times the size of the record in this case, and there was no issue about an associate's time.

remaining 19.1 hours for "supervision" of Ms. Borowski's work is reasonable. Thus, the total number of attorney hours we will credit for appellate work is 121.4 hours (80 + 41.4 = 121.4 hours).

Thus, the total attorney hours in this case for pre-EAJA Petition time is 161.0 hours (39.6 district court hours + 121.4 appellate court hours). We will award fees for those hours at the rate of $152.50 per hour, which results in an amount of $24,552.50 for pre-EAJA Petition attorney time. The agreed pre-EAJA Petition paralegal time is 2.1 hours for JMG at $85.00 per hour for a total of $178.50. Thus, for pre-EAJA Petition litigation, the award totals $24,731.00 ($24,552.50 + 178.50 = $24,731.00).

As for the EAJA Petition attorney time, the Commissioner has no objection to plaintiff's fee request in the opening brief (see entries in Pl.'s Ex. B dated 01/25/06, 03/09/06, 03/19/06). For this time, the attorney fee total is 1.3 hours multiplied by $152.50/hour for a total of $198.25 for Mr. Schulz. The EAJA Petition paralegal time was 2 hours multiplied by $85.00 or $170.00. Thus, for the initial EAJA Petition's preparation, the total award for attorney and paralegal time is $368.25. Adding that amount ($368.25) to $24,731.00 results in a sub-total of $25,099.25.

Plaintiff also seeks recovery of 6.8 hours for the EAJA reply brief. Given plaintiff's need to respond fully to the arguments recited by the government, we do not view that amount of time excessive. Thus, the calculation is 6.8 hours multiplied by $152.50, which equals $1,037.00. We add that amount to $25,099.25, to reach a total EAJA award of $26,136.25.

## CONCLUSION

For the reasons stated above, the Court grants the plaintiff's motion for fees (doc. # 32) pursuant to EAJA, 28 U.S.C. § 2412, in the amount of $26,136.25.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: September 12, 2006